## NATHANIEL RUSSELL

1812.

*v.*

Feb. 17th.

## JOHN I. CLARK'S EXECUTORS, **AND OTHERS.**

*Absent....Washington, justice.*

ERROR to the Circuit Court for the District of Rhode Island, in a suit in equity, brought by Russell, against Clark in his life time, as surviving partner of the firm of Clark and Nightingale; to recover from him the amount of sundry bills of exchange, drawn by one Jonathan Russell, for the use of Robert Murray & Co. whose agent he was, upon James B. Murray, in London, and indorsed by the Complainant, Nathaniel Russell, upon the faith of two letters written to him by Clark and Nightingale, in the following words :

The construction of a letter of credit, or of guaranty, must be the same in a Court of equity, as in a Court of law; and any facts which might be introduced into one Court, to explain the transaction, may be introduced into the other. On the question of fraud also, the remedy at law is complete. Where the only ground of equitable jurisdiction is the discovery of facts solely within the knowledge of the Defendant, and the Defendant by his answer discloses no such facts, and the Plaintiff supports his claim by evidence in his own possession unaided by the confessions of the Defendant, the Plaintiff should be dismissed from the Court of Chancery and

*Providence, 20th January, 1796.*

" *Nathaniel Russell, Esq.*

DEAR SIR,

Our friends, Messrs. Robert Murray & Co. merchants in New York, having determined to enter largely into the purchase of rice, and other articles of your produce in Charleston, but being entire strangers there, they have applied to us for letters of introduction to our friend. In consequence of which, we do ourselves the pleasure of introducing them to your correspondence as a house on whose integrity and punctuali    the utmost dependence may be placed; they will write you the nature of their intentions, and you may be assured of their complying fully with any contract or engagements they may enter into with you.—The friendship we have for these gentlemen, induces us to wish you will render them every service in your power; at the same time, we flatter ourselves the correspondence will prove a mutual benefit.

We are, with sentiments of esteem,

Dear Sir,

Your most obedient servants,

CLARK & NIGHTINGALE."

RUSSELL
*v.*
CLARK'S
EX'RS.

Providence, *21st January, 1796.*

" *Nathaniel Russel, Esq.*

DEAR SIR,

permitted to assert his rights in a Court of law. To charge one person with the debt of another, the undertaking must be clear and explicit. It is the duty of him who gives credit to another upon the responsibility or undertaking of a third person, immediately to give notice to the latter of the extent of his engagements. A fraudulent recommendation, will subject the person giving it, to the damages, sustained by the person trusting to it. An answer, responsive to the bill, is evidence in favor of the Defendant. A misrepresentation of the solidity of a mercantile house made under a mistake of the fact, without any interest or fraudulent intention, will not sustain an action, altho' the Plaintiff may have suffered damage

We wrote you yesterday, a letter of recommendation in favor of Messrs. Robert Murray & Co.—We have now to request that you will render them every assistance in your power.—Also that you will, immediately on the receipt of this, vest the whole of what funds you have of ours in your hands, in rice on the best terms you can. If you are not in cash for the sales of the China and Nankins, perhaps you may be able to raise the money from the Bank, until due; or purchase the rice upon a credit, till such time as you are to be in cash for them; the truth is, we expect rice will rise, and we want to improve the amount of what property we can muster in Charleston, vested in that article, at the current price; our Mr. Nightingale is now at Newport, where it is probable he will write you on the subject.

     We are, dear sir,

         Your most obedient servants,

            CLARK & NIGHTINGALE."

The bill stated, that in February, 1796, Jonathan Russell, arrived in Charleston, from New York, bringing a letter of credit from the house of Joseph & William Russell, of Providence, with whom the Complainant had only a slight acquaintance, but believed them to be in good credit.

That Jonathan Russell informed the Complainant, that when he left New York, he was authorized by R. M. & Co. to say, that they would forward to him at Charleston, *letters of guaranty* from their friends, Clark & Nightingale, of Providence, addressed to the Complainant, and that he expected soon to receive them.

That he soon afterwards, presented to the Complainant, the before mentioned letters of Clark & Nightingale, of the 20th and 21st of January, 1796, and that confiding in the responsibility and integrity of C. & N. and in the purity and simplicity of their views, he in-

dorsed the bills in question, amounting in the whole to 3,886l 10s 8d sterling.

That Clark & Nightingale, knew that the house of R. M. & Co. began business without capital, under their patronage, and were supported by their credit, and that in the year 1795, it was found requisite, in New York and Boston, where the house of R. M. & Co. chiefly did business, that their bills of exchange, in order to their being negotiated in those places, should have the indorsement of C. & N. and even then it was necessary they should be drawn for very small sums.

That the advances and responsibilities of the house of C. and N. for that of R. M. and Co. were originally predicated chiefly upon their personal honor and integrity, and afterwards continued upon the assurances of R. M. & Co. that in case of disastrous events, they should be secured by a priority of indemnity. And that upon like assurances C. and N. agreed to aid R. M. & Co. with funds and credit to enable them to carry on the Charleston speculation which had been concerted between them; and had agreed to give them a letter of credit and guaranty to the Complainant; and if the letters sent, did not in legal construction, amount to such, (which the Complainant does not admit) it must have arisen either from the Defendant, Clark, accidentally penning the letters in terms that did not quite come up to the idea intended by himself, (in which case it would be contrary to equity and good conscience, that he should be permitted to avail himself of such accident to the injury of the Complainant,) or from the terms being *artfully* and *fraudulently* contrived by the Defendants, Clark, to give to the Complainant the impression he intended, and yet by secret reservation to leave a door open for his own escape.

That the deceased partner of the Defendant, (Nightingale,) in his life time, confessed, that the house of C. & N. was bound by their letters to indemnify the Complainant; and that Clark has offered to compromise.

The bill further states, that the recommendations of the house of R. M. & Co. given by C. & N. were *falla-*

RUSSELL
v.
CLARK'S
EX'RS.

by reason of such misrepresentation. A merchant who indorses the bills of another upon the faith of the guaranty of a third, cannot, (upon the insolvency of the principal debtor and of the guaranty,) resort to a trust fund created by the principal debtor for th. idemnity of the guarantor for the amount which th. guaranty should pa. But the person for whose benefit a trust is created, who is to be the ultimate receiver of money, may sustain a suit in equity to have it paid directly to himself. When the guaranty is insolvent, a Court of equity will not decree the money, [raised for his indemnity,] to be paid to him without security that the debt to the principal creditor should be satisfied

RUSSELL
v.
CLARK'S
EX'RS.

This Court
will not make
a final decree
upon the me-
rits of the case,
unless all per
sons who are
essentially in-
terested, are
made parties
to the suit,
although some
of those per-
sons are not
within the
jurisdiction of
the Court.

cious and unwarranted, covenous, and deceitful, and were made in consequence of a concerted plan, to put R. M. & Co. into possession of large property, upon credit, to give the chance in the first instance of great profits to that house, in case the speculation should be successful, and finally, whether successful or not, to bring to the hands of C. & N. large reimbursements from the proceeds of property so to be acquired, and that accordingly, short-ly after, it was known in America, that the house of R. M. & Co. must fall, the Defendant, Clark, availed himself of the private stipulations before alluded to, by obtaining from that house, the greater part of their pro-perty, including the proceeds of the rice purchased up-on the credit of the Complainant's indorsements.

That J. B. Murray, who was named a trustee, being a citizen of New York, could not be compelled to ap-pear in the Circuit Court, at Rhode Island, and there-fore, is not made a party.

The Complainant exhibited copies of five deeds from R. M. & Co. assigning their property to the Defendant, Clark—viz: one dated 23d March, 1798—one 24th March, 1798—two dated 22d of March, 1799—and one 31st of May, 1800 ; and called for the originals.

The bill avers, that the house of R. M. & Co. has been duly declared bankrupt, and discharged—that the assignees under the commission, are resident in New York, and could not be made parties to this bill ; and that in fact, there was nothing left to assign to them— the previous assignments to the Defendant, having transferred the whole.

That Joseph and William Russell, assigned away all their property, so that the Complainant cannot enforce against them, the judgment at law, which he had ob-tained upon their letter of credit.

That in the deed of the 24th of March, 1798, among the uses to which the assigned property is to be applied, is the following—viz : " Also for the sum or sums, " which the said Clark & Nightingale, have paid or are "liable to pay on a suit commenced against them, by " Nathaniel Russell, of Charleston, South Carolina, for

"amount of certain bills of exchange, there drawn in
"his favor by Jonathan Russell, of New York, for the
"amount of three thousand nine hundred and ninety-
"eight pounds seven shillings and two pence sterling,
"or thereabouts." And in a subsequent part of the
same deed, another use declared is, "to retain, and pay
"to Joseph & William Russell, the amount that shall be
"recovered *and paid* from them to Nathaniel Russell, of
"Charleston, in South Carolina, upon account of a let-
"ter of credit to him, given by the said Joseph & Wil-
"liam Russell, in favor of Jonathan Russell," &c.

The Complainant further states, that although, he is
unable to compel the payment from Joseph & William
Russell, by reason of their having assigned away all
their effects, yet William, who has survived Joseph, re-
fuses to assent, or afford any aid in converting those
funds to the relief of the Complainant; and the Defen-
dant has the use of the property for an indefinite time;
and refuses to account therefor to the Complainant.

He further charges, that C. & N. were dormant co-
partners with R. M. & Co. in the Charleston specula-
tion—that R. M. & Co. were, at the time of the recom-
mendation from the Complainant, deeply involved in
debts, which they had not the means of discharging,
that their credit was fictitious, and the fiction created
and kept up by C. & N. who were privy to their trans-
actions, *and who knew that the representation they made
was false, and fraudulent.*

The bill seeks a discovery of the funds of R. M. & Co.
in the hands of the Defendant, Clark, and of the trusts
upon which he holds them, and the manner in which he
has applied them or any part of them; and prays that
the intention of the parties as to the guaranty, may be
enforced—that the proceeds of the rice purchased by
means of the Complainants indorsements may be ap-
plied to his relief—that the Defendant, Clark, may be
compelled to execute the trust reposed in him, and to
apply to his indemnification, the funds set apart for the
indemnification of Clark & Nightingale, and of Joseph
and William Russell; and that he may have such other
relief, as his case may require, and be entitled to.

RUSSELL

*v.*

CLARK'S
EX'RS.

RUSSELL          The deed of assignment of the 23d of March, 1798,
  *v.*          transferred all the property and effects of the firm of
CLARK's        R. M. & Co. in the United States, to the Defendant,
EX'RS.         Clark, and J. B. Murray, to pay the balances due them,
               and to such other creditors, as R. M. & Co. should no-
minate within twelve months ; reserving to them also,
the power to appoint new trustees instead of Clark and
J. B. Murray, if they should think proper.   This as-
signment was made expressly subject to certain prior
liens on certain parts of the property, which are parti-
cularly set forth ; one of which was an assignment to
Loomis and Tillinghast, of a policy on certain goods la-
den on board the ship Jefferson, and a policy on goods
on board the ship Butler—and four promissory notes of
Mott and Lawrence, amounting to 6,460 dollars, the
proceeds of which were to be applied, first to indemnify
and secure Loomis and Tillinghast, for a debt due to
them, and for responsibilities they had, or were about
to incur—and out of the surplus to pay to *Joseph and
William Russell,* of Providence, all such monies as they
should be *liable to pay,* as guaranty to the Defendant.
This assignment was afterwards transferred by Loomis
and Tillinghast to Clark in consideration of 60,000 dol-
lars, of R. M. & Co's. notes, indorsed by L. & T.
given up to them by Clark.

The deed of the 24th of March, 1798, contained an
express power in R. M. & Co. to revoke or alter the
directions and appointments therein contained, and to
make other appointments and give other directions,
within twelve months from that date.   In pursuance
of which power, they did, by an indenture tripartite,
dated the 21st of March, 1799, between R. M. and Co.
of the first part—the Defendant Clark, and J. B. Mur-
ray of the second part, and the Defendant and J. B.
Murray and other creditors, of the third part, revoke
and annul the deed of the 24th of March, 1798 ; and
substituted no other trust for the indemnification of the
Defendant, Clark, against his liability to the Com-
plainant.

The deed of the 22d of March, 1799, which declared
the new trusts, under which the Defendant, Clark and
J. B. Murray should hold the assigned property, di-
" rects them to pay " to William Russell, as surviving

" partner of the firm of Joseph and William Russell, " the amount *that shall be paid by them* on a judgment " recovered against them by Nathaniel Russell, of Char- " leston, in South Carolina, for the amount of 3998*l* 7*s* " 2*d* sterling in bills of exchange guaranteed by him by " the said Joseph and William Russel in favor of the " drawer Jonathan Russell. And the said parties of " the first part do hereby order and direct the said par- " ties of the second part, *to allow and pay,* in manner " before mentioned, to the parties of the third part, in " addition to the claims herein before admitted, all char- " ges of suit and other expenses *paid* upon the said se- " veral claims together with interest due thereon, pay- " able in like manner with the claims as herein before " recited."

This deed also contained a power of revocation and of making new appointments of trust.

On the 31st of May, 1800, (the day before the bank-rupt law of the United States was to go into operation) R. M. & Co. made their final declaration of trust, under the power reserved in their former deeds; and express-ing an intention to alter and add to the trusts formerly declared, but without expressing any intention of revo-king any of them, they designate *five* successive classes of creditors to be paid in the order in which they are named; but neither of those classes included an indem-nity to the Defendant, Clark, or to William Russell, against their liability to the Complainant.

The Defendant, Clark, in his answer, admits his let-ters of the 20th and 21st of January, 1796, to the Com-plainant, but does not admit that the Complainant at that time considered them as letters of credit, or guaranty, that he indorsed the bills upon the faith of those letters. He avers that they were intended only as letters of in-troduction and recommendation, and not as letters of credit or of guaranty, and that the house of R. M. & Co. was then in good credit. He denies that the house of C. & N. had any interest in the purchases made in Charleston by Jonathan Russell. He does not admit that any bills of R. M. & Co. with the indorsement of C. & N. were negotiated in New York. He denies that he had any reason to suspect that the credit of the

house of R. M. & Co. was ficticious and not real—he denies that C. & N. attempted to give them a false credit to deceive the public or any person. He avers that he as well as the house of C. & N. had full faith and confidence in the responsibility and solvency, the honor and integrity of the house of R. M. & Co. and had no agreement, or understanding with them for their indemnity or security in case of any disastrous event, of which he had no apprehension. He denies that C. & N. ever made any agreement to aid R. M. & Co. in raising funds for the speculation in Carolina produce—and that they ever asked from C. & N. any letter of guaranty to go or be sent to Charleston—he denies that they ever promised such letter of guaranty, or gave R. M. & Co. any authority to instruct their agent to assure any person that such letter of guaranty should be furnished by them. He denies that the letters of 20th & 21st of January were designed, or written in artful and ambiguous terms with intent to deceive. He does not admit that his partner, Nightingale, acknowledged that they were letters of guaranty or that the house of C. & N. were bound thereby to indemnify the Complainants.

He avers that C. & N. never asked, and R. M. & Co. never offered, any security for their responsibilities until after the failure of R. M. & Co. was publicly known in the United States. He admits the deeds and assignments to himself, and J. B. Murray, as set forth in the Complainants bill, and admits the receipt of large sums of money, a part of which has been applied, and part remains to be applied to the objects of the trust. He states that since the execution of the deeds of assignment to him and J. B. Murray, Robert Murray has been discharged as a bankrupt, under the law of the United States; and the assignees under that commission have brought suit in equity in New York against this defendant, and J. B. Murray and R. M. & Co. claiming an account of the assigned property, and praying that it may be transferred to them; which suit is still pending.

He declares his belief that the assigned property will be sufficient to discharge all the appropriations made by the deeds of trust, and also the whole claim due to the Complainant, but denies that it is liable in his hands therefor.

William Russell, in his answer, admits the guaranty, and judgment; and the insolvency of the house of Joseph and William Russell. He states that he has no knowledge that R. M. & Co. ever conveyed any property to the Defendant, Clark, and J. B. Murray in trust to indemnify him, but if there be any such conveyance he is willing that the Complainant should have the benefit thereof.

RUSSELL
*v.*
CLARK'S
EX'RS.

There was evidence that bills of exchange for *15,500* sterling drawn in eighteen sets, by R. M. & Co. and indorsed by Clark and Nightingale, were sold in Boston, in December, 1795, and January, 1796, and derived credit chiefly from their indorsement.

There was also evidence to prove that the house of R. M. & Co. were in good credit until after January, 1796.

The decree, in the Court below, was rendered, by consent, against the Complainant who brought his writ of error.

DEXTER, *for the Plaintiff in Error, contended,*

1. That the letters themselves, under the circumstances of the case, imposed a liability upon Clark and Nightingale to indemnify the Plaintiff—and

2. That the Defendant, Clark, was liable by reason of the funds which he held in trust for the Plaintiff's indemnification.

1. In support of the first point he contended, *first,* that the letters themselves created an absolute responsibility.—2d. That if they did not of themselves create an absolute responsibility, yet they contained a direct affirmation of a fact which the Defendant must show to be true, or must prove that he was himself deceived—and 3d. That the evidence shows that the affirmation, contained in the Defendant's letters, was not true; and that he was guilty of such negligence and falshood, as will render him liable to indemnify the Plaintiff.

1. The Defendant is absolutely bound by these letters.

They contain an unqualified assertion of a *fact*—the responsibility and integrity of R. M. & Co. In other cases, if a man will assert positively a fact, and request another person to act upon the faith of such assertion, he is bound to make good his assertion, or to compensate the injury which *he* has sustained who placed confidence in such assertion.

Thus if a person covenant that he has good title—he is bound to make it good or to repair the damage sustained by his defect of title. This is the case of a covenant under seal.

So in a policy of insurance, the positive assertion of a fact is a warranty, and he who makes it is bound to prove it to be true. This is a case not under seal.

In the present case, it is more reasonable that C. & N. should sustain the loss, because they *volunteered* the affirmation, and with a view to induce the Plaintiff to give credit to R. M. & Co. Words spoken upon *enquiry* made for information will not bind, if he who spoke them was himself deceived.

But the present case is not like that, it was not a sudden answer to be made on enquiry—it was a deliberate affirmation, in writing, made to one who they knew would place confidence in their representation, of a fact which they had the means of knowing, and which they ought to have known, before they asserted it in such a manner. It was not a letter of friendship—but of business. It requested the Plaintiff " to render them *every assistance in his power* ;" that is, to aid them with his credit.

If a man receive services upon request, he is bound to remunerate them. Is there in reason, justice, or law, any difference between *services rendered*, and *responsibilities incurred*? In the present case, C. & N. not only requested the Plaintiff to lend his credit to R. M. & Co. but told him he might *be assured* of their complying fully with any contract or engagement they might enter into with him. If the words had been "*we* assure you," &c. there could have been no doubt of their responsibility. But when they say "you may be assured," &c. it is evident they meant the same thing. It was

their assurance, whether expressed in the one way or the other—and it was their assurance upon which the Plaintiff acted.

2d. But if these words are so artfully selected, that they would not in a Court of law bind the Defendant, yet if they were calculated to deceive, and intended to induce the Plaintiff to give credit to R. M. & Co.—if they were such as between merchants, were understood to guaranty the credit of the persons recommended, they will have that effect in equity.

C. & N. ought to have been assured of the fact of the solidity of the house of R. M. & Co. before they stated it so positively.

They ought to have enquired of them the state of their affairs. It is not sufficient for them to say that they did not know but the fact was so. If they were not certain, they ought to have stated the simple truth—that it was a young house—had been conducting business for some time and sustained a good character. That they themselves had given them credit to a considerable amount and that they were still their debtors. If C. & N. had written thus, as they ought to have done, the Plaintiff would not have given them credit—he would have continued to hold the rice until he had security—and would not have given it up, but upon the faith of letters which in his opinion would bind C. & N. to indemnify him.

They must have known that they were not justified in stating the facts as they did. There were facts within their knowledge which ought to have excited their suspicions of the credit of R. M. & Co.—particularly the fact that their bills could not be sold without the indorsement of C. & N. and then only in small sums. The knowledge of the great losses of R. M. & Co. by captures in 1794, and the fact that they began business without capital, ought to have made C. & N. more careful. That C. & N. trusted them, is not evidence that they believed them solid. They had a personal confidence that R. M. & Co. would secure them by assignments in case of difficulty, as in fact, they did.

RUSSELL
v.
CLARK'S
EX'RS.

RUSSELL
v.
CLARK's
EX'RS.

2. As to the *trust*. It is objected that the assignments are to the Defendant, Clark & J. B. Murray *jointly*, and that the latter is not made a Defendant to this bill. But he was not within the jurisdiction of the Court, and by the act of Congress he could not be made a Defendant, unless he had been found in Rhode Island. By the practice of Courts of equity, they will not dismiss a bill for want of parties who cannot be served with process. 2. *Atk.* 510. *Darwent v. Walton.*

Another reason for charging Clark alone, is that he has recived by far the greater part of the funds of R. M. & Co. and it is a principle in equity that each trustee shall answer only for the effects which he himself received. *Digest of chancery cases*, 182. 1. *P. Will.* 81. *Fellows v. Mitchel.* 3. *Atk.* 583. *Leigh v. Barry.*

But there is a stronger ground for charging Clark alone. He received from Loomis and Tillinghast, an assignment of funds which they held in trust, to pay to Joseph and William Russell all such monies as they should be *liable to pay* as guaranty to the Plaintiff. The Defendant, Clark, received a transfer of this assignment from Loomis and Tillinghast, with full notice of the trust, and is thereby bound to execute it. It was a trust substantially for the benefit of the Plaintiff. There were no funds of Joseph and William Russell, or of either of them, to which he could resort to satisfy his judgment against them. If he had recovered the money from them they might have resorted to this fund; and equity, which avoids circuity of action, will make it liable directly to the Plaintiff.

C. LEE, suggested that there was no allegation in the bill to which these facts are pertinent.

DEXTER. The Defendant, is charged with having received such assignments as make him liable as trustee to the Plaintiff.

These facts appear in the exhibits, which are referred to in the bill and make part of it. The bill prays for general relief—and under such a prayer, the Court will give such relief as the facts of the case will warrant.

C. LEE, *contra.*

This case presents two questions—

1. Whether the Plaintiff's demand shall be satisfied out of the funds of *Clark & Nightingale*—and

2. Whether it shall be satisfied out of the funds of *R. M. & Co.*

1. Are Clark & Nightingale liable out of their own estate?

If so, it can only be upon the letters of the 20th and 21st of January, 1796, either because they create a liability at law—or because they contain a fraudulent misrepresentation. If the letters do not create a liability at law, a Court of Equity will not extend them beyond their legal import.—If they do create a liability at law, a Court of Equity, has no jurisdiction.

None of the parties considered them as letters of guaranty, until it was suggested by Jonathan Russell, in his letter to Nathaniel Russell, of the 11th of July, 1796. The Plaintiff himself, although he wrote six letters to the Defendant, after he indorsed the bills, and before notice of their dishonor, yet never once mentioned that he had indorsed such bills upon the credit of C. & N.— This negligence to give them notice that he had done so, is a complete discharge to them, upon the same principles, as the want of notice discharges the drawer of a bill of exchange.

The bill states certain facts from which slight inferences are drawn, that C. & N. intended to guaranty the Plaintiffs indorsement of the bills; but the answer of Clark, expressly denies all those inferences, and all intention of becoming responsible, and all private assurances of indemnity from R. M. & Co.

Although no external proof can be added to the letters, or adduced to explain them, yet the answer of the Defendant, who is called upon to answer as to his intention, is evidence. It is made evidence by the Plaintiff, having called for it in his bill.

RUSSELL
*v.*
CLARK'S
EX'RS.

RUSSELL   The opinion of this Court, upon the construction of
*v.*      the letters in this case, as reported in 3. *Dall.* 424, al-
CLARK'S   though not conclusive, because it was not upon the point
EX'RS.    on which the Court decided the cause, yet will be res-
          pected. The Chief Justice, there states, that the ma-
jority of the Court inclined to the opinion, that the let-
ters did not, of themselves, import an undertaking, or
guaranty. To support this opinion, Mr. Lee referred
to the cases cited in 3. *Dall.* 420. 421.

But it is said, that the Defendant is liable by reason
of the misrepresentation. If so, it is a clear case at law,
and not in equity.

But the allegation is not supported by the evidence.
The representation was true. R. M. & Co. *were* a
house of integrity and punctuality—and were in good
credit.

In order to charge the party at law, (and *a fortiori* in
equity,) the representation must be false. 3. *T. R.* 51,
*Pasley v. Freeman*—2. *Esp.* 92.—But here the evidence
proves the representation to be true—and if it had been
false, it would have been wholly a case at law.

2. As to the ground of *trust.* The Plaintiff relies up-
on three trust funds. 1. The indemnity to Clark and
Nightingale. 2. The indemnity to Joseph and William
Russell. 3. The trust fund in the hands of Loomis and
Tillinghast.

1. The indemnity to Clark & Nightingale, was only
against the suit at law then depending, which has been
since abandoned by the Plaintiff; and the fund with-
drawn, and the deed revoked under the power of revoca-
tion which it contained.

2. The indemnity to Joseph and William Russell,
was only for what they should *pay.* They never did,
and never will pay any thing. It was a provision for
*their* benefit, not for that of the *Plaintiff.* Equality is
equity. If the Plaintiff claims a *priority* of payment, he
must show a strict right. The indemnity is upon the
condition of a release, which J. & W. Russell have ne-
ver given. But the deeds under which this indemnity is

claimed, were revoked by those of March, 1799, and
May, 1800.

RUSSELL,
v.
CLARK'S
EX'RS.

3. As to the trust deed to Loomis and Tillinghast;—
the evidence respecting it is not admissible. It appears
only in a copy of the examination of one of the partners
of the house of R. M. & Co. before the commissioners
of bankrupt, certified by the clerk and judge of the dis-
trict Court, which is not competent evidence.

Nothing in the bill alludes to this deed, so that Clark
had no opportunity of answering respecting it. Besides
it appears that the amount of indemnity claimed by
Loomis and Tillinghast, which was to be first satisfied
before the trust could arise in favor of Joseph and Wil-
liam Russel was for R. M. & Co's. notes to the amount
of 60,000 dollars, indorsed by Loomis and Tillinghast,
and the property pledged to them does not appear to
exceed 28,000 dollars. Clark delivered up to L. and
T. the notes for 60,000 dollars, and received the pro-
perty amounting to 28.000 only. Clark had a right
to stand in the shoes of L. and T. and claim the 60,000
dollars, in preference to J. and W. Russell, so that, in
fact there was no fund assigned for the benefit of the
latter. There was no surplus after satisfying the claim
of Loomis and Tillinghast.

J. B. Murray ought to be a party. The Plaintiff
has no right to call upon one of the trustees only to an-
swer for the whole fund, when he has received only a
part. If the jurisdiction of the Circuit Court of the
United States is so limited, that it cannot compel the
appearance of all the parties, let the Plaintiff apply to
the State Court. The case of *Darwent and Walter,*
5. *T. R.* 500 applies to the State Courts, but not to
Courts of limited jurisdiction; as the Circuit Courts of
the United States are.

The assignees of the bankrupt, Murray, ought also to
be made parties, for they have an interest in the resi-
duum.

The Plaintiff also ought to have obtained a judg-
ment and *fieri facias* against *R. M. & Co.* before he could
call for a discovery of their effects. *1. Vernon,* 399.
*Augell v. Draper.—3. Atk.* 200, *Shirley v. Watts.*

The want of proper parties, may be objected at the hearing. 3. *Atk.* 111. *Jones v. Jones.*—2. *Atk.* 510. *Darwent v. Walton.*

JONES, *on the same side.*—1st. *As to the law of the case.*

This Court, as a Court of Equity, has no jurisdiction upon any ground stated in the bill.—It states that the letters amount to a guaranty, but that the Plaintiff has failed in three suits at law. If there be a remedy at law, and no fraud, nor defect of evidence, it is no case in equity. Nor is there any equitable jurisdiction on the ground of construction of the letters. They must have the same construction in equity as at law. The confession that the Plaintiff has no legal remedy, is a confession that the Defendant is not bound by the contract. *Mitford*, 111. 189. Nor does the ground of fraud alone, give an equitable jurisdiction. A Court of law is as competent as a Court of Equity, to decide a case of fraud. But it is said, there is a different remedy in a Court of Equity. This is true in some cases. When the fraud is on the part of the Complainant, a Court of Equity will refuse its aid ;—when on the part of the Defendant, it may set aside a deed obtained by fraud.; but it will give no remedy in damages for a fraud ; it will give no indemnity for a deceit by a third party. Where these are the object of the suit, the remedy is at law where the damages are assessed by a jury. *Préc. in ch.* 147.

It is true, that mistake and accident, are grounds of equitable jurisdiction ; but the mistake or accident, must be specifically stated ; the accident must be manifest, and the evidence clear. The Court will then correct the instrument, and make it what it ought to have been. 1. *Vez.* 318, 319. *Hankle v. Roy. Ex. ass. Comp.* 3. *Br. C. C.* 451. *Burt v. Barlow.*—1. *Vez. jun.* 59; *Doran v. Ross.*—id. 171, *Payne v. Collier.* id. 364, *Smith v. Maitland.*

2. As to the construction of the letters, *per se* ; and the effect of the evidence in regard to them.

They do not import a contract on their face.—A letter of credit is well understood among merchants. It

must include a request to advance money.   No declaration that a man is trust-worthy, is sufficient.—The words of the letters are to be taken in their usual signification.—" *You may be assured,*" means only you may be certain—it is only an affirmation of a fact.   It contains no promise.  It is immaterial how false or fraudulent the affirmation may be ; it is but an affirmation, and does not constitute a contract.

*RUSSELL*
*v.*
*CLARK'S*
*EX'RS.*

No action will lie against a man upon his mere affirmation that he will give his daughter a portion.—1. *Vin.* 261, *Wing v. Talbot.*—There must be *fraud* accompanied by *actual damage,* to support an action on the case, for a deceit, against a stranger to the contract. 3. *T. R.* 51, *Pasley v. Freeman.*   2. *East.* 92, *Haycraft v. Creasy.*—It is not law, that the Defendant is liable, if he did not use due deligence to ascertain the truth.—But the evidence shows that the representation was *fairly and honestly* made, and therefore whether true or false, is wholly immaterial.  If the Plaintiff was deceived, it must have been either by his own mistake of the purport of the letters, or by the assertions of Jonathan Russell. R. M. & Co. in their letters to the Plaintiff, call them letters of *introduction and recommendation,* not letters of credit or guaranty.   There is no evidence to connect the representations, or assertions of Jonathan Russell, with C. & N.—He was not their agent, nor can they be responsible for any thing he may have said.

There is no evidence of *mala fides,* but strong evidence of the contrary.  When one merchant speaks of the credit or integrity of another, he speaks only as to general reputation.   In the present case, this general reputation is fully proved.   The burden of proof lies on the Plaintiff, to show some act or information to the contrary, which came to the knowledge of the Defendant.—Fraud is never to be presumed.   As to the captures in 1793 or 1794, it does not appear that the vessel and cargoes were not insured.  As those losses had happened several years before the letters of recommendation, and as the house of R. M. & Co. for aught that appears, had stood unshaken thereby, those losses themselves seem to be the best evidence of the stability of that house.

As to the *Trust.*   This is a ground of complaint to-

RUSSELL
*v*
CLARK'S
EX'RS.

tally distinct from the question of liability under the contract. The Complainant seems to rely upon some specific lien on the rice itself, or its proceeds: But when he let the rice go out of his hands, upon being satisfied of the solidity of the house of R. M. & Co.—he could not recall it—he lost all claim to a specific lien.

The evidence respecting the assignment to Loomis and Tillinghast, is not such as this Court can notice. There is only a certificate of the clerk of the District Court, that it is a copy of a paper filed in that Court by Robert Murray, upon his examination under a commission of Bankruptcy. It is not proved by the oath of any person who had seen the original, nor is it mentioned in the bill, nor confessed in the answer. The Plaintiff can make no title to a specific lien on this fund.

The other trusts in favor of C. & N.—and of Joseph & William Russell, were expressly revoked by the subsequent deeds; and the Plaintiff does not claim as a general creditor.

The Plaintiff must, in his bill, show a title;—an interest, and a right to call upon the Defendants. There must be some privity between them; and all persons interested in the trusts, must be made parties. *Mitford* 31, 136, 144, 220. 2. *Br. C. C. Burt v. Dennet.*

If there are no allegations in the prior part of the bill to justify the interrogatories in the subsequent part, the Defendant is not bound to answer them.—The Plaintiff had no right to call for a discovery of general assets; he was confined to the funds alleged in his bill. This is fatal as to the trust of Loomis and Tillinghast;—and another objection is, that suits are now pending in New York against the present Defendants and others, calling for an account of these very funds.

If the Courts of the United States have not power to call all parties before them, it is a good objection to their proceeding in the case. The Plaintiff should have applied to the State Courts, which have power. It is true that each trustee is only liable for what he received, but that is no reason why the co-trustee should not be made a party.

DEXTER AND P. B. KEY, *in reply.*

RUSSELL
*v.*
CLARK'S
EX'RS.

It is true that there ought to be before the Court, all the parties who may be necessary to enable the Court to do complete justice; but the books also add the proviso, that they be within the jurisdiction of the Court. Under the agreement to bring this cause up to this Court for a final decision, without an argument in the Court below, it was not expected that it would now be delayed by the allegation of the want of proper parties.

1. As to the liability of the Defendant upon the letters—this case differs essentially from that of *Haycraft and Creasey, in 2. East. 92.*—In that case it appeared that the Defendant himself, was grossly duped and deceived, and his assertion was founded upon his belief only. If this had not been the case he would have been liable. There is no difference in morality between the assertion of a falsehood, and an affirmation, without any knowledge on the subject, with intent to induce the Plaintiff to give credit. We have called upon the Defendant to show that he was himself deceived. This he has not done, but has shewn facts tending to excite his suspicions, and which ought to have put him more upon his guard. It is doubtful, whether the case of *Haycraft and Creasey,* be law. It was decided by two doubting Judges against the clear and decided opinion of the Chief Justice, supported by great strength of argument. The opinion of *Grose,* is clearly untenable.

In the case of *Pasley v. Freeman, 3. T. R. 51,* the only doubt was, whether the only remedy was not in Equity, and whether it could be supported upon the strict principles of the common law. But that doubt was overruled, and a legal remedy established. But it is not decided that there is no relief in Equity. Courts of Chancery, do give relief in some cases, where relief may also be had at law. Thus; when a case of equitable jurisdiction is blended with a case at law—Or where the remedy at law is not complete, or where a Court of Equity once gets jurisdiction of the case upon proper grounds, although there may be a remedy at law, the Court of Equity, will retain its jurisdiction.

Although this cause has been several times argued,

yet this is the first time the question has been made, whether the Defendant, Clark, is not liable upon the ground of misrepresentation.

The Plaintiff was not bound to give C. & N. notice that he had indorsed the bills of R. M. & Co. It would have been indelicate both with regard to them and to C. & N. It was time enough to give notice when the bills were dishonored.

The conveyance of *cest ui que trust* will be respected in a Court of equity. W. Russell, by his answer, has assigned the trust fund to the Plaintiff.

The supposed objections to the trust of Loomis and Tillinghast do not exist. The bill calls upon the Defendant to set forth all the assignments and trust funds he holds from R. M. & Co. and to produce the original deeds, of which copies are produced by the Plaintiff, and to declare on what trusts he holds the property assigned. The bill charges him with holding funds in trust for the Plaintiff. The recital, in one of the deeds produced, leads to the trust of Loomis and Tillinghast, which they assigned to the Defendant who had notice of the trust, and without the knowledge of William Russell. The Defendant knew to what the recital alluded; he knew of the trust in favor of Joseph and W. Russell and ought to have stated it. The notes of R. M & Co. with the indorsement of Loomis and Tillinghast, which the Defendant gave up to them in lieu of the property assigned to them by R. M. and Co. were of no value. They were notes which R. M. and Co. had given to Clark in payment, and which they had paid by the assignment of other property so as to relieve L. and T. from their indorsement—so that in truth the whole funds which R. M. and Co. had assigned to L. and T. for their indemnity, and for the indemnity of Joseph and W. Russell were applicable to the relief of the latter; and ought to be applied to the indemnification of the Plaintiff.

The nature of the speculation itself indicated that the proceeds of the sales of the rice, were to constitute the fund out of which the bills were to be paid which were drawn to pay for its purchase. The parties upon the

bills naturally looked to that fund as their principal security. This was known to the Defendant, Clark; and with that knowledge he obtained possession of the proceeds of this very rice, for the purchase of which, the Plaintiff indorsed the bills. The Defendant did not, as a stranger, get them innocently into his hands, but obtained those funds in consequence of his own misrepresentation as to the stability and integrity of the house of R. M. and Co. It is unconscientious for him to retain those funds under such circumstances.

RUSSELL
*v.*
CLARK'S
EX'RS.

*March 5th. All the judges being present,*

MARSHALL, *ch. justice,* delivered the following opinion:

This is a suit in Chancery instituted for the purpose of obtaining from the Defendants, payment of certain bills of exchange drawn by Jonathan Russell, an agent of Robert Murray & Co. and indorsed by Nathaniel Russell; which bills were protested for non-payment, and have since been taken up by the indorser. The Plaintiff contends that the house of Clark & Nightingale had rendered itself responsible for these bills by two letters addressed to him, one of the 20th and the other of the 21st of January, 1796, on the faith of which his indorsements, as he says, were made.

The letters are in these words—(See the preceding statement of the case.)

The bill alleges that these letters bind Clark and Nightingale to pay to Nathaniel Russel any sum for which he might credit Robert Murray & Co. either because,

1st. They do, in law, amount to a guaranty—or that,

2d. They were written with a fraudulent intent to be understood as a guaranty—or that,

3d. They contain a misrepresentation of the solidity and character of the house of Robert Murray & Co.

Soon after the protest of these bills for non-payment, Robert Murray & Co. failed and became bankrupts.

RUSSELL
*v.*
CLARK'S
EX'RS.

Previous to their Bankruptcy they assigned a great proportion of their effects, including the cargoes for the purchase of which these bills were drawn, to John J. Clark and John B. Murray in trust for Clark and Nightingale, and for sundry other creditors and purposes mentioned in several trust deeds which are recited in the bill, and which appear in the record. The Plaintiff claims to be paid his debt out of this fund.

The answer of John J. Clark was filed, and a certain William Russell, a partner of the house of Joseph and William Russell, who gave a letter of credit and guaranty to the drawer of the bills indorsed by the Plaintiff, Nathaniel Russell, was made a party Defendant. Against Joseph and William Russell a judgment had been obtained by Nathaniel Russell for the amount of the bills indorsed by him, but they had become insolvent, and no part of this judgment had been discharged.

Many depositions having been taken and sundry exhibits filed, a decree of dismission, without argument, and *pro forma* was rendered in the Circuit Court for the District of Rhode Island, and the cause comes into this court by appeal from that decree.

It is contended by the Defendants, that the letters which have been recited create no liability on the part of Clark and Nightingale, but are to be considered *merely as* letters of introduction. Whatever may be the construction of the letters, they insist that the Plaintiff, if intitled to recover, has complete remedy at law, and that a Court of Chancery can take no jurisdiction of the cause.

It is believed to be unquestionable that a suit in Chancery could not be sustained on these letters against Clark and Nightingale, unless some additional circumstance rendered an application to this court necessary.

The Plaintiff contends that such application is necessary, because there are a great variety of facts belonging to the transaction which could not be introduced into a court of law, or which would not avail him in that court, but which are proper for the consideration of a court of equity.

Because some of these facts rest within the knowledge of the Defendants—and

Because he cannot, at law, subject the trust fund to his claim.

So far as respects the question whether these letters constitute a contract of guaranty, there can be no doubt but that the construction in a court of law or a court of equity must be precisely the same, and that any explanatory fact which could be admitted in the one court, would be received in the other.

On the question of fraud the remedy at law is also complete, and no case is recollected where a court of equity has afforded relief for an injury sustained by the fraud of a person who is no party to a contract induced by that fraud.

It is true that if certain facts, essential to the merits of a claim purely legal, be exclusively within the knowledge of the party against whom that claim is asserted, he may be required, in a Court of Chancery, to disclose those facts, and the court, being thus rightly in possession of the cause, will proceed to determine the whole matter in controversy. But this rule cannot be abused by being employed as a mere pretext for bringing causes, proper for a court of law, into a court of equity. If the answer of the Defendant discloses nothing, and the Plaintiff supports his claim by evidence in his own possession unaided by the confessions of the Defendant, the established rules, limiting the jurisdiction of courts, require that he should be dismissed from the Court of Chancery, and permitted to assert his rights in a court of law.

It is also true, that if a claim is to be satisfied out of a fund, which is accessible only by the aid of a Court of Chancery, application may be made, in the first instance, to that court, which will not require that the claim should be first established in a court of law.

In the case under consideration, the answer confesses nothing. So far from furnishing any evidence in support of the Plaintiff's claim, it denies, in the most full and explicit terms, the whole equity of the bill.

This ground of jurisdiction, therefore, is totally withdrawn from the case.

It remains to inquire whether the Plaintiff can be let in to claim on any part of the trust fund: and this depends principally on his claim being within any one of the trusts declared.

The first trust deed, which was executed by Robert Murray & Co. on the 23d day of March, 1798, is declared to be in trust to apply the monies arising from the trust property " in payment and satisfaction of the debts and balances which shall appear to be found to be due and owing from the said parties of the first part (Robert Murray & Co.) to them the said John J. Clark and John B. Murray (the trustees) and to such other of the creditors" of the said Robert Murray & Co. as they should, by any instrument of writing, within twelve months, appoint.

It may be doubted whether this declaration of trust would be applicable to a collateral undertaking not, at the time, carried into judgment.

In the second deed, one of the trusts declared is, to repay Clark and Nightingale for any sums they may pay or be liable to pay under a suit at the time depending against them. That suit was dismissed.

Without deciding whether Russell could avail himself of this trust, having failed in the particular action then depending, the court will proceed to inquire how far Clark and Nightingale were liable to the Plaintiff for the debt due to him from Robert Murray & Co.

The law will subject a man, having no interest in the transaction, to pay the debt of another, only when his undertaking manifests a clear intention to bind himself for that debt. Words of doubtful import ought not, it is conceived, to receive that construction. It is the duty of the individual, who contracts with one man on the credit of another, not to trust to ambiguous phrases and strained constructions, but to require an explicit and plain declaration of the obligation he is about to assume. In their letter of the 20th, Clark and Nightingale indi-

cate no intention to take any responsibility on themselves, but say that Mr. Russell may be assured Robert Murray & Co. will comply fully with their engagements. In their letter of the 21st they speak of the letter of the preceding day as a letter of recommendation, and add " we have now to request that you will endeavor to render them every assistance in your power."

How far ought this request to have influenced the Plaintiff? Ought he to have considered it as a request that he would advance credit or funds for Robert Murray & Co. on the responsibility of Clark and Nightingale, or simply as a strong manifestation of the friendship of Clark and Nightingale for Murray & Co., and of their solicitude that N. Russell should aid their operations as far as his own view of his interests would induce him to embark in the commercial transactions of a house of high character, possessing the particular good wishes of Clark and Nightingale?

It is certain that merchants are in the habit of recommending correspondents to each other without meaning to become sureties for the person recommended; and that, generally speaking, such acts are deemed advantageous to the person to whom the party is introduced, as well as to him who obtains the recommendation.

These letters are strong, but they contain no intimation of any intention of Clark and Nightingale to become answerable for Robert Murray & Co., and they are not destitute of expressions alluding to that reciprocity of benefit which results from the intercourse of merchants with each other. " The friendship," say they, in their letter of the 20th, " we have for these gentlemen, induces us to wish you will render them every service in your power, at the same time we flatter ourselves this correspondence will prove a mutual benefit."

Mr. Russell appears to have contemplated the transaction as one from which a fair advantage was to be derived. He received a commission on his indorsements.

The court cannot consider these letters as constituting a contract by which Clark and Nightingale undertook

RUSSELL
*v.*
CLARK's
EX'RS.

to render themselves liable for the engagements of Robert Murray & Co. to Nathaniel Russell. Had it been such a contract, it would certainly have been the duty of the Plaintiff to have given immediate notice to the Defendants of the extent of his engagements.

It remains to inquire whether these letters contain such a misrepresentation of the circumstances and character of the house of Robert Murray & Co as to render them accountable to the Plaintiff for the injury he has sustained by trusting that company.

The question, how far merchants are responsible for the character they give each other, is one of much delicacy, and of great importance to the commercial world.

That a fraudulent recommendation (and a recommendation, known at the time, to be untrue, would be deemed fraudulent) would subject the person giving it to damages sustained by the person trusting to it, seems now to be generally admitted. The case of *Pasley v. Freeman,* reported in 3 *Durnford and East,* recognizes and establishes this principle. Indeed, if an act, in itself immoral, in its consequences injurious to another, performed for the purpose of effecting that injury, be not cognizable and punishable by our laws, our system of jurisprudence is more defective than has hitherto been supposed.

But this does not appear to the Court to be the case described. It is proved incontestibly that when the letters, on which this suit depends, were written, Robert Murray and Co. were in high credit, and were carrying on business to a great extent, which was generally deemed profitable. The bill charges particular knowledge in Clark and Nightingale that this apparent prosperity was not real. But this, as well as every other allegation of fraud, is explicitly denied by the answer; and the answer, being responsive to the bill, is evidence. Had the Plaintiff been able to exhibit proofs which would have rendered this fact doubtful, it might have been proper to have directed an issue for the purpose of trying it : but he has exhibited no such proofs.

In writing the letters, then, recited in the bill, Clark

and Nightingale stand acquitted of the imputation of fraud.

But it is contended by the Plaintiff, that the representation they made of the circumstances of Robert Murray and Co. was, at the time untrue; and that this misrepresentation, whether made ignorantly or knowingly, was equally injurious to Nathaniel Russell, and equally charges them with the loss he has sustained by trusting to their assurances.

The fact, that Robert Murray and Co. were not, in January, 1796, in solvent circumstances, is not clearly made out: but the cause does not rest entirely on this fact. The principle, that a mistake in such a fact as the real internal solidity of a mercantile house, whose external appearance is unsuspicious, shall subject the person, representing their solidity to another, to the loss sustained by that other in trusting to this representation, is not admitted.

Merchants know the circumstances under which recommendations of this description must be given. They know that when one commercial man speaks of another in extensive business, he must be presumed to speak from that knowledge only which is given by reputation. He is not supposed to have inspected all the books and transactions of his friend, with the critical eye which is employed in a case of bankruptcy. He must, therefore, be supposed to speak of the credit, not of the actual known funds of the person he recommends; of his apparent, not of his real solidity. In such a case it is certainly incautious and indiscreet to use terms which imply absolute and positive knowledge. It may, perhaps, be admitted that, in such a case, fraud may be presumed on slighter evidence than would be required in a case where a letter was written with more circumspection. Yet, even in such a case, where the communication is honestly made, and the party making it has no interest in the transaction, he has never been declared to be responsible for its actual verity. The reason of the rule is, that merchants generally possess, and are therefore presumed, in their correspondence, to speak from that knowledge only of the circumstances of other merchants, which may be acquired by observing

RUSSELL
v.
CLARK'S
EX'RS.

their course of business, their punctuality and their general credit.

This principle appears to have been fully considered in the case of *Haycraft v. Creasey,* reported in 2 *East,* in which case all the authorities were reviewed. It does not appear that a single decision has been ever made, asserting the liability of the writer of such a letter. The case of *Haycraft v. Creasey* denies his liability; and that case appears to this Court to have been decided in conformity with all previous adjudications.

It is therefore the opinion of the Court, that Clark & Nightingale, having believed, and had reason to believe, so far as is shown by the evidence in this cause, that the representation they made to the Plaintiff, of the character and circumstances of Robert Murray and Co. was true, are not liable to the Plaintiff, in consequence of that representation, for the credit he gave to that company.

A claim is also set up to the funds in the hands of Clark and Nightingale, founded on the circumstance that they consist, in part, of the rice purchased with the bills indorsed by the Plaintiff. But as no specific lien is alleged to have existed, and as the particular fraud, alleged to have been committed to acquire those funds, is not proved, this claim is unsustainable.

The Plaintiff, then, cannot be considered as a trust creditor in consequence of any claim, he can assert against Clark and Nightingale.

The second deed which is dated on the 24th day of March, 1798, is also in trust "to pay to Joseph and William Russell, the amount that shall be recovered and paid from them to Nathaniel Russell," &c. "upon account of a letter of credit," &c. "and for which the said Nathaniel Russell hath recovered a judgment against the said Joseph and William Russell."

No part of this judgment has ever been paid, and Joseph and William Russell are insolvent. The state of things, then, has perhaps not yet occurred in which Joseph and William Russell could demand the execution

of the trust: and the Court, though with some hesitation, feels constrained to decide that, under the terms of this trust, Nathaniel Russell claiming through Joseph and William Russell, cannot demand its execution directly to himself.

It also appears that, in September, 1796, Robert Murray and Co. assigned to Loomis and Tillinghast, certain personalties in trust. This assignment was surrendered to Clark and Nightingale in consideration of notes to a large amount, in which Loomis and Tillinghast were bound for Robert Murray and Co. It appears that Clark and Nightingale are otherwise secured with respect to these notes: at least, there is reason to believe that they are secure.

Clark and Nightingale, having taken this assignment with notice of the trust, take it clothed with the trust. They are trustees for the same uses and to the same extent with Loomis and Tillinghast.

A paper appears in the cause, which purports to be the assignment to Loomis and Tillinghast. The assignment is in trust, first, to repay themselves any sums which they may pay on account of certain undertakings made by them for Robert Murray and Co. and, secondly, in trust " to pay to Joseph and William Russell all such monies as they shall be liable to pay, as guaranty as aforesaid, to Nathaniel Russell upon bills," &c. reciting the bills for which this suit is instituted.

It is settled in this Court, that the person for whose benefit a trust is created, who is to be the ultimate receiver of money, may sustain a suit in equity, to have it paid directly to himself.

This trust being to pay Joseph & William Russell, a sum they are liable to pay to Nathaniel Russell, and being created in such terms, that the money is certainly payable to them, the purposes of equity will be best effected by decreeing it, in a case like the present, to be paid directly to Nathaniel Russell. Indeed, a Court ought not to decree a payment to Joseph & William Russell, without security, that the debt to Nathaniel Russell should be satisfied.

RUSSELL
v.
CLARK'S
EX'RS.

But it is not shown, by any legal evidence, that this paper is the assignment which was made in trust to Loomis & Tillinghast, and transferred by them to Clark & Nightingale. Its verity is not admitted by the Defendants, nor proved by the Plaintiff.

Nor are the circumstances under which the transfer was made, nor the present circumstances of the trust, sufficiently before the Court, to enable it to decide with certainty, whether the prior trust to Loomis & Tillinghast is satisfied, or otherwise so secured, that the trust fund may now be applied to the debt of Joseph & William Russell.

Could these defects be supplied, the Court would still be unable to decree in favor of the Plaintiff, for want of proper parties.

The incapacity imposed on the Circuit Courts to proceed against any person residing within the United States, but not within the District, for which the Court may be holden, would certainly justify them in dispensing with parties merely formal. Perhaps in cases where the real merits of the cause may be determined without essentially affecting the interest of absent persons, it may be the duty of the Court to decree, as between the parties before them. But in this case, the assignees of Robert Murray, & Co. are so essential to the merits of the question, and may be so much affected by the decree, that the Court cannot proceed to a final decision of the cause till they are parties. They may contest the validity of all the deeds under which, both parties claim, and assert in themselves, for the benefit of the creditors generally, a right to the whole fund. Certainly this Court ought not, on light grounds, and without due precaution, to change the hands in which this fund is placed, until any claim of the assignees to it may be decided.

Should this difficulty be obviated by suspending the effect of the decree, till the validity of the trust deeds should be decided, or by directing security to be given, another presents itself, which cannot be removed. The assignees have a right to contest the claim of Nathaniel Russell, and may, either deny its original validity, or

show that it has been paid. They are, then, essential parties, and the Court ought not to decree in favor of the Plaintiff, without them. It is possible, that they may consent to make themselves parties in this cause, and, as a Court may, instead of dismissing a bill brought to a hearing without proper parties, give leave to make new parties, the Court will, in this case, set aside the decree of the Circuit Court, dismissing this bill, and remand the cause to the Circuit Court, with leave to make new parties.