35 U.S. 380 (____)
10 Pet. 380
*SAMUEL B. LEE, PLAINTIFF IN ERROR,
v.
NATHANIEL DICK AND OTHERS.
Supreme Court of United States.

*381 The case was submitted to the court, in printed arguments, by Mr. Peyton, for the plaintiff; and by Mr. Bell, for the defendants.
*387 Mr. Justice THOMPSON delivered the opinion of the court.
This case comes up on a writ of error from the circuit court of the United States for West Tennessee. It was a special action on the case, on a guarantee given by the plaintiff in error in favour of Nightingale and Dexter. The declaration is special, stating that the defendant in the court below, by his guarantee bearing date the 24th of September in the year 1832, directed and addressed to the plaintiffs below, requested them to accept the draft of Nightingale and Dexter for the amount of 2000 dollars, and thereby promised to guaranty the punctual payment of the same to that amount: and avers, that Nightingale and Dexter afterwards, on the 5th of October, 1832, drew a bill on the plaintiffs below for 4250 dollars; and that, confiding in the promise of the defendant, they accepted the same, &c. The declaration contains a count alleging an agreement by the defendant to guaranty the payment of 2000 dollars part of the 4250 *388 dollars; with the necessary averments to charge the defendant with the payment of the 2000 dollars.
*492] *The defendant pleaded the general issue; and upon the trial of the cause, the plaintiff produced the following evidence:
 "Memphis, September 24th, 1832.
"Messrs. N. and J. Dick and Co.
"Gentlemen: Nightingale and Dexter, of Maury county, Tennessee, wish to draw on you at six or eight months date. You will please accept their draft for 2000 dollars, and I do hereby guaranty the punctual payment of it. Very respectfully your obedient servant.
 "SAMUEL B. LEE."
 "Nashville, October 5th, 1832.
"Exchange for $4250 00.
"Six months after date of this first of exchange (second unpaid,) pay to H.R.W. Hill, or order, 4250 dollars  cents, value received, and charge the same to account of yours, &c.,
 "NIGHTINGALE AND DEXTER.
"To N. and J. Dick and Co., New Orleans."
The plaintiff also offered in evidence the following letter of the defendant, Samuel B. Lee; which letter was written upon the same sheet of paper with the guarantee, but on different parts of it.
 "Memphis, September, 24th, 1832.
"Mr. P.B. Dexter,
"Dear Sir: Yours of the 15th inst. came to hand in due time. I was absent, or should have answered it sooner. I left Mount Pleasant sooner than I expected when I saw you last. I learned that my presence was wanted at Savannah, and put o p h. I had calculated to get along with business without having any thing to do with drawing bills or with the bank; but there is no cash in this quarter, and our bills at the east are falling due, and I have no other alternative but to draw for what funds I am compelled to have, and may, during the winter (should I go largely into the cotton market, wish to draw for a considerable amount. I have no objections to guaranty your bill, except it might affect my own operations. I, however, send you a guarantee for 2000 dollars, which you can use if you choose. The balance I have no doubt your friend, Mr. Watson, will do for you. I would cheerfully do the whole amount, but expect to do business *493] with that house, and do not wish to be cramped *in my own operations. Spun thread, also coarse homespun are in good demand. My compliments to Mrs. and Miss Nightingale. Your
friend, "SAMUEL B. LEE."
It was agreed by the counsel, that the bill of exchange and letter *389 should go to the jury, and their effect, &c., be charged upon by the court. The plaintiff proved that N. and J. Dick and Co. accepted the above bill, upon the faith of the said guarantee, and that they had paid it, and gave notice to the defendant, that they looked to him for the money. The court charged the jury, that if the defendant intended to guaranty a bill of exchange to be drawn for 2000 dollars, he would not be liable for a bill drawn for upwards of 4000 dollars. But if he intended to guaranty 2000 dollars of a bill to be drawn for a larger amount, then he would be liable for the 2000 dollars. That the court was of opinion, that the letter accompanying the guarantee was admissible in evidence, to explain whether the guarantor meant to guaranty a bill for 2000 dollars, or only 2000 dollars in a bill for a larger amount. The court also charged the jury, that no notice, by N. and J. Dick and Co. to the defendant, that they intended to accept, or had accepted and acted upon this guarantee, was necessary. To which opinion of the court the defendant excepted.
The questions arising upon this case are:
1st. Whether this evidence will warrant the conclusion, that the defendant intended to guarantee 2000 dollars in a bill to be drawn for a larger sum.
2dly. Whether N. and J. Dick and Co. were bound to give notice to the defendant that they intended to accept, or had accepted and acted upon the guarantee.
A guarantee is a mercantile instrument, and to be construed according to what is fairly to be presumed to have been the understanding of the parties, without any strict technical nicety. If the guarantee stood alone, unexplained by the letter which accompanied it, it would undoubtedly be limited to a specific draft for 2000 dollars, and would not cover that amount in a bill for a larger sum; but the letter which accompanied it fully justifies the conclusion, that the defendant undertook to guaranty 2000 dollars in a draft for a larger amount. The letter and guarantee were both written by the defendant, on the same sheet of paper, bear the same date, and may be *construed together, as constituting the guarantee. 7 Cranch, [*494 89. This letter is obviously in answer to one received from Dexter, one of the firm of Nightingale and Dexter: for he says, "Your letter of the 15th instant came to hand in due time, &c. I have no objection to guaranty your bill, except it might affect my own operations. I, however, send a guarantee for 2000 dollars, which you can use if you choose." This was clearly in answer to an application to guaranty a larger sum; and admits of no other construction than that he should have no objection to guaranty the whole sum he requested, if he was not under apprehensions that it would affect his own operations. The bill not having been drawn until the 5th of October, eleven days thereafter, the letter must have referred to a bill he wished to draw. But this is not all: he adds, "The balance I have no doubt your friend, Mr. Watson, will do for you." The balance! What balance could this mean? Clearly the balance *390 between the 2000 dollars for which he sent the guarantee, and the amount of the sum mentioned in the letter for which he wanted a guarantee. And again he says: "I would cheerfully do the whole amount, but expect to do business with that house, and do not wish to be cramped in my own operations." The whole amount! What amount is here referred to? This admits of no other answer, than that it was the amount of the sum mentioned in the letter he had written to Dexter, in which he requested a guarantee. The opinion of the circuit court, therefore, upon the construction of the guarantee, was correct.
The next question is, whether the plaintiffs were bound to give notice to the defendant, that they intended to accept, or had accepted and acted upon this guarantee. It is to be observed, that this guarantee was prospective: it looked to a draft thereafter to be drawn: and this question is put at rest by the decisions of this court. The case of Russel v. Clark's Executors, 7 Cranch, 91, was a bill in chancery to recover a sum of money upon a guarantee alleged to grow out of several letters, written by Clark and Nightingale to Russel. The court say, "We cannot consider these letters as constituting a contract by which Clark and Nightingale undertook to render themselves liable for the engagements of Robert Murray and Co. to Nathaniel Russel. Had it been such a contract, it would certainly have been the duty of the plaintiff to have given immediate notice to the defendant, of the extent of his engagements." Although the point now in question was not precisely the one before the court *495] in that case, as there was *no contract of guarantee made out, yet it is laid down as a settled and undisputed rule. The case of Edmondson v. Drake and Mitchell, 5 Peters, 624, was an action founded on a letter of credit, given by Edmondson to Castello and Black, as follows:  "Gentlemen: The present is intended as a letter of credit in favour of my regarded friends, Messrs. J. and T. Robinson, to the amount of 40 or 50,000 dollars; which sum they may wish to invest through you in the purchase of your produce. Whatever engagements these gentlemen may enter into, will be punctually attended to."
On the trial, the court was requested to instruct the jury, that in order to make the defendant liable to the plaintiff under the contract, they were bound by the law merchant to give him due notice. Upon this prayer the court was divided, and the instruction was not given: and this court decided that the instruction ought to have been given. The court said it would indeed be an extraordinary departure from that exactness and precision which peculiarly distinguish commercial transactions; which is an important principle in the law and usages of merchants; if a merchant should act on a letter of this character, and hold the writer responsible without giving notice to him that he had acted on it. The authorities on this point, say the court, unquestionably establish this principle. And again, the case of Douglass and others v. Reynolds and others, 7 Peters, 125, was an action upon a guarantee; and the court was requested to instruct the jury, *391 that to enable the plaintiff to recover on the letter of guarantee, they must prove that notice had been given, in a seasonable time after said letter of guarantee had been accepted by them, to the defendant, that the same had been accepted. This instruction the court below refused to give; and this court say the instruction asked was correct, and ought to have been given. That a party giving a letter of guarantee has a right to know whether it is accepted; and whether the person to whom it is addressed means to give credit on the footing of it or not. It may be most material, not only as to his responsibility, but as to future rights and proceedings. It may regulate in a great measure his course of conduct, and his exercise of vigilance in regard to the party in whose favour it is given. Especially it is important in case of a continuing guarantee, since it may guide his judgment in recalling or suspending it. This last remark by no means warrants the conclusion that notice is not necessary in a guarantee of a single transaction; but only that the reason of the rule applies more forcibly to a continuing *guarantee. It is unnecessary, after [*496 such clear and decided authority in this court on this point, to fortify it by additional adjudications. We are not aware of any conflict of decisions on this point; and if there are, we see no reason for departing from a doctrine so long and so fully settled in this court.
We do not mean to lay down any rule with respect to the time within which such notice must be given. The same strictness of proof is not necessary to charge a party upon his guarantee, as would be necessary to support an action upon the bill itself; when by the law merchant a demand upon, and refusal by the acceptors must be proved in order to charge any other party upon the bill. 8 East, 245. There are many cases where the guarantee is of a specific existing demand by a promissory note or other evidence of a debt; and such guarantee is given upon the note itself, or with reference to it and recognition of it; when no notice would be necessary. The guarantor, in such cases, knows precisely what he guaranties, and the extent of his responsibility; and any further notice to him would be useless, 14 Johns. Rep. 349; 20 Johns. 365. But when the guarantee is prospective, and to attach upon future transactions; and the guarantor uninformed whether his guarantee has been accepted and acted upon or not, the fitness and justice of the rule requiring notice is supported by considerations that are unanswerable.
We are accordingly of opinion that the circuit court erred in deciding that notice was not necessary; and that the judgment must be reversed.
This cause came on to be heard on the transcript of the record from the circuit court of the United States for the district of West Tennessee, and was argued by counsel; on consideration whereof, it is ordered and adjudged by this court, that the judgment of the said circuit court in this cause be, and the same is hereby reversed; and that this cause be, and the same is hereby remanded to the said circuit court for further proceedings.