Carr, J.
Upon the points ruled by the circuit court, and therefore the only points presented for our consideration, I strongly incline to think the judge decided correctly.
*94 With respect to the deed of trust executed by Gregory to Colgin, I consider it as closely connected with the question before the court and jury: it was subsequent in date to the deed which Gregory gave Browne, and he assigned to Henley; it covered the same property ; it recognized the debt from Gregory to Henley, as well as the deed to secure it; and one of the considerations on which Gregory executed the deed to Col-gin, was by it declared to be, that Colgin agreed, when he should make his collections, which he expected at Christmas following, to pay off Henley the amount of his deed of trust; 650 dollars to be paid to Henley on the 1st January 1822, and the balance of Henley's debt, on the 1st January 1823. These stipulations of Colgin in this deed, throw great light both on the consideration moving Colgin to give the pajier called the promise to Henley, and on that paper itself. I think, therefore, that this deed was clearly admissible: it was a link in the plaintiff’s chain of proof, and proper for the consideration of the jury.
Let us see now, whether the paper relied on as a promise, was admissible? And first, did it, either taken by itself, or in connection with the other evidence, amount to a promise ? We must recollect, that there is nothing technical either about this action of assumpsit, or in the word promise. It is a word in free and common use. I consider that any writing signed by A. and addressed or given to B. by which the writer declares his willingness, assent or intention, to pay B. a certain sum of money, is a promise to pay that sum, whatever be the form of words in which it is cloathed: and where the words of the party promising are at all doubtful, the court will take into consideration the situation and circumstances of the parties, to enable it to judge of their respective intentions and understanding, at the time of the agreement made; Fell on Merc. Guar. 39. Keate v. Temple, 1 Bos. & Pull. 158. And in Russell v. *95 Clark, 7 Cranch 89. chief justice Marshall (discussing the necessity alleged in the bill for coming into equity upon certain letters said to amount to a guaranty) remarks,—“ So far as respects the question whether these letters constitute a contract of guaranty, there can be no doubt that the construction in a court of law or a court of equity must be precisely the - same, and that any explanatory fact, which could be admitted in the one court, would be received in the other.” What are the explanatory facts here ? 1. The bond of Gregory, shewing the amount he owed Henley; 2. the deed of trust given by him on the mill and land to secure it, dated the 8th February .1821; 3. the deed of trust from' Gregory to Colgin, dated 4th August 1821, covering the same property with Henley’s, and bearing on its face, as one of the considerations for giving it, the undertaking and agreement of Colgin, to pay off Henley’s debt; in pursuance of which engagement, we see, 4. an indorsement on Gregory’s bond, that Colgin paid 400 dollars on the 12th February 1825 ; and 5. Colgin’s letter to Henley, bearing date the 24th of the same month, in which he says—“ This is to inform you, that I am willing to agree to see you paid, within sixteen months from this date, for Mr. Gregory, on account of your deed of trust on his mill and land, 500 dollars.” Now, I ask, is it possible with these facts before us, not to understand this letter? Here was a subsequent incumbrancer, bound by his deed to redeem the prior incumbrancer; bound too by the strong ties of interest, to prevent a sacrifice of the mortgaged subject, which Henley had the power at any time to effect by a sale under his deed, and which Colgin could only prevent by paying the money or making terms: standing thus, he writes and sends this letter. Is it not clear, that he meant to put off the sale of the mortgaged property, by a promise to pay the 500 dollars in sixteen months ? I cannot for one moment doubt it. It is objected, that he does not *96 promise to pay, but says, “ I am willing to agree to see you paid:” but is not the meaning the same? I am willing to agree,—or I do agree,'—or I am willing to see you paid; are they not different forms often used, especially by unlearned men, to express the same idea? Look at the cases: they will shew, that the courts never catch at words, where the meaning is clear. Thus in Saunders v. Wakefield, cited at the bar, the form of the promise was—“Mr. Wakefield will engage to pay the bill drawn by Pitman in favour of Stephen Saunders;” and this was never doubted to be a promise, an actual engagement, though on account of there being no consideration expressed, it was thought to fall within the statute of frauds. Again, in Pillans & Rose v. Van Mierop & Hopkins, 3 Burr. 1663. a mercantile house being written to on the subject, replied, “We will give the bill due honour:” lord Mansfield said, this was in effect accepting it. I ask what could be the meaning of Coigin's letter, if not an undertaldng to see Henley paid? It did not assume the form of a proposition; but Coigin, living in Hanover, sent this letter to Henley at Williamsburg, more than a hundred miles off, announcing at once his promise to see him paid; he did not ask to hear from him. It was said, that Henley ought by all means to have returned an answer, saying whether he would accept the terms, in order that, in case he did, Coigin might secure himself. ' I think it not improbable, that he did reply by letter; but, assuredly, this was not necessary for Coigin's protection, for he had already received the consideration for his promise in Gregory's deed of trust to him, and had bound himself by that deed to pay this money. An additional consideration was, his interest to save the property from sacrifice, as it was pledged to him for a considerable sum. By these considerations he seems to have been determined to make this effort, and to let the event shew whether the terms were accepted or not, taking a sale *97 of the land, within sixteen months as a rejection, and a forbearance for that time as an acceptance. In Egerton v. Matthews, 6 East 309. it was held, that a note thus—“We agree to give Mr. Egerton 19d. per lb. for 30 bales of Smyrna cotton,” signed by the buyers, was a sufficient memorandum of the bargain, although it did not import an agreement of Egcrton to make any sale, and might, as well as the case here, he called a more proposal. I think then that this was clearly a promise by Colgin to pay Henley 500 dollars, within sixteen months.
But it was objected, that it was not properly do-scribed in the declaration. That describes it, in several counts, as a promise to pay the 500 dollars, in part of the debt due from Gregory to Henley and secured by deed of trust; and, surely, this is accurately enough pleaded, to justify its admission as the promise laid in those counts. The declaration, to he sure, alleged this promise to have been made on a consideration which does not expressly appear on its face; but this was not stated as forming any part of the promise itself, but merely as the moving cause, the ground of support to the promise, and surely could furnish no reason for excluding from the jury, the promise which was well described. We must remember that this was a question, not upon the weight, but the admissibility of the paper.
If it were necessary to discuss the question of consideration here, it would be sufficient to say, that all admit it to be a well settled principle of the common law, that to support every engagement not under seal, there must he a sufficient consideration. And I think, there are more than one, to support this promise; 1. that stated in the declaration, the forbearance to proceed on the deed of trust, within the sixteen months, which, though not expressed, is strongly implied by the nolo itself, and made still more clear by the explanatory facts in the case; and 2. the direct interest in the *98 promiser to redeem the mortgaged property for his own benefit.
There is one more objection to this note, which I shall consider, but more briefly than I could have wished, but for the length to which these remarks have already grown. It is said to be an undertaking for the debt of another, and therefore void by the statute of frauds, because the consideration of the promise is not expressed upon its face. The english statute of frauds was first adopted into our code in 1787, more than a century after its birth. It was not till 1804 that the case of Wain v. Warlters was decided, in which it was held, that not only the agreement to pay the debt of another, but the consideration, as an essential part of that agreement, must be stated on its face. That this was a new construction, then first given to a statute which had been more than a century in operation, is clear from the fact, that neither the bar nor the bench cited any former decision in support of it. The judges rested it entirely upon the technical meaning of the word agreement, and the mischiefs meant to be prevented by the statute. The case seems to have given both surprize and dissatisfaction, as we see by the frequent attacks upon it made in subsequent cases, and the seeming evasion of it, in some, by the court. Indeed, lord Eldon (a judge second to few in law learning), has in the court of chancery, positively denied its correctness, and in one case overruled it. In ex parte Minet, he says—“ There is a variety of authorities directly contradicting the case in the king’s bench, which is a most important case in its consequences •, for the undertaking of one man for the debt of another, does not require a consideration moving between them.” Again, in ex parte Gardom, he says—“ The first objection, viz. that which Wain v. Warlters was cited to support, is of great importance. Until that case was .decided some time ago, I had always taken the law to *99 be clear, that if a man agreed in -writing to pay the debt of another, it was not necessary that the consideration should appear upon the lace of the writing.” There are many more cases, both pro and con, which though I have examined, I will not now discuss. But I will state, that in Saunders v. Wakefield, cited at the bar, Wain v. Warlters was supported, though upon principles and reasoning wholly different; and in Jenkins v. Reynolds the court of common pleas also supported it, but went back to the view taken by Jord Ellenborough, of the import of the word agreement. In this country, the case has been followed in New York, in Leonard v. Vredenburgh, 8 Johns. Rep. 29. 30. and in other cases; but chief justice Kent declared himself not altogether satisfied with the decisions. In Massachusetts, it has been wholly departed from; 5 Mass. Rep. 360. and 17 Id. 122. where chief justice Parker, in an opinion of great research, learning and ability, entirely dissents from it: see also the argument; of the late chief justice Swift of the supreme court of Connecticut, in Day’s edition of East’s reports, as anote to the case of Wain v. Warlters. I have thus touched this part of the case, to shew that even if our statute were taken exactly from the english, I should not (as at present inclined) approve the construction given it there. But our statute varies materially from theirs— “No action shall be brought, whereby to charge the defendant upon any special promise to answer for the debt &c. of another &c. unless the promise or agreement &c. be in writing &c.” This word promise is not in this part of the english statute ; there, the word agreement alone is used. And upon this difference, the case of Wain v. Warlters turned. Lawrence, J. says—“ If the question had arisen merely on the first part of the clause, I conceive that it would only have been necessary that the promise should have been stated in writing but he adds, that the statute going on to say *100 “ that no person shall be charged &c. unless the agree-A . . . ° ° ment &c. be m writing, shews that the word agreement was meant to be used in a sense different from promise, and something besides the mere promise was required to bestated.” Le Blanc, J. says—“ I should have been as well satisfied, however, if recurring to. the words used in the first part of the clause, they had used the same words again in the latter part, and said, unless the promise or agreement &c. be in writing. But not having so done, I think we must adhere to the strict interpretation of the word agreement, which means the consideration for which, as well as the promise by which, the party binds himself.” Now, that which this judge wishes the parliament had dope, is the very thing which our legislature has done, as if specially to avoid this construction. This is the opinion the supreme court of the U. States, as delivered by chief justice Marshall in Violet v. Patton. He says, “ The statute of England enacts, that no action shall be brought, in the cases specified, unless the agreement on which such action shall be brought &c. shall be in writing &c. The Virginia act enacts, that no action shall be brought in the specified cases unless the promise or agreement &c. shall be in writing. The reasoning of the judges” (he adds) “ in the cases in which they have decided, that the consideration ought to be in writing, turns upon the word agreement, of which the consideration forms an integral part. This reasoning does not ajiply to the act of Virginia, in which the word promise is introduced.” I do not quote this as binding authority, for I know that it belongs to this court alone to settle authoritatively the construction of our own statutes; but I cite it as the opinion of an enlightened court, delivered by a judge bred up under our law; and I concur in the opinion. It is objected, that this construction would leave open a wide door for the mischiefs which the statute meant to prevent; as parol proof must be resorted to, if the *101 consideration be not required to be stated in the promise. But where the words oí a statute are clear, we must lake them as tbe index of the meani ng. Our statute says the promise shall be in writing. Now, we all know that this word has never been taken to include not only the undertaking but the consideration moving to it. They are perfectly distinct things. Nor can 1 think that so wide a door is left open, as seems to be imagined. The statute, in this branch of it, meant to prevent those perjuries so apt to occur in swearing parol promises or agreements upon men, and those mistakes also, which are often made, even by those who mean honestly, in stating from memory, the substance of parol contracts loosely made perhaps, and carelessly listened to: it therefore said, that the promise to pay the debt of another must be in writing. This was thought a sufficient guard; for the reigning principle with most men, self interest, would generally prevent their deliberately entering into a written promise to burthen themselves with the debt of another, without a sufficient consideration. In ninety-nine cases out of a hundred, there would in fact he a valuable consideration for such written promise; and then it would be easier as well as more natural, to prove this true consideration, though by parol, than to invent and prove a false one. I am for affirming the judgment.
Cabell, J.
The main question is, Whether our statute of frauds makes it essential to the validity of a written promise to pay the debt of another, that it should express, on its face, the consideration on which it is founded ? I am clearly of opinion that it does not. The court of king’s bench in Wain v. Warlters, decided that, under their statute of frauds, the consideration must be expressed in the writing declaring the promise. But the english statute is different from ours. For although ours is, in general, almost a literal transcript from the *102 english statute, yet there is an important addition to one . ... , r _ . .. oí its clauses, bearing directly, as I conceive, on this question. The english statute provides, that no action shall be brought on certain promises, contracts or agreements, “unless the agreement upon which the action shall be brought, or some memorandum or note thereof shall be in writing, and signed by the party to be charged therewith, or some other person thereunto by him lawfully authorized.” Our statute of frauds declares, that no action shall be brought on the same promises, contracts or agreements, “ unless the promise or agreement See. shall be in writing See.” The case of Wain v. Warlters turned on the strict technical construction of the word “ agreement.” It was the only word used in. the english statute, to express what must be in writing, and it was construed to include, ex vi termini, not only the promise, but the consideration! oí the promise. All the judges put the case on this ground. It is clear, however, that two of the judges, Lawrence and Le Blanc, would have decided the case differently, if the word promise had been repeated, as well as the word agreement, in the latter part of the statute; and I think it is fairly to be inferred from the language of Grose, J. that he was of the same opinion. Now, as our statute does repeat the word promise as well as the word agreement (“ unless the promise or agreement shall be in writing”), I think the case of Wain v. Warlters, so far from being an authority against the construction of our statute, for which the appellee’s counsel contends, affords a strong argument in its support. The case of Saunders v. Wake-field decides the same point that was decided in Wain v. Warlters, and assigns new and additional grounds for the decision. But that case was decided as late as 1824, and is not authority to which we are obliged to submit; and, with all my respect for the decisions of the courts of Westminster Hall, my mind cannot yield its assent to the new grounds taken in Saunders v. Wake *103 field. In Violet v. Patton, the supreme court of the ° ........ United States expresses the opnuon, that the introduction of the word promise into our statute, makes it essentially different from the english statute, and renders it unnecessary that the writing expressing the promise, should express the consideration also. It is worthy of remark, that the decision in Wain v. Warliers, even supported as it was by the technical meaning of the word agreement (the only term used in the english statute), was condemned by some of the ablest judges in England, as giving a construction to the statute different from that which it had received for a century. It is true, that our statute did not mean to give validity to any promise which was not valid at the common la,w; and it did not, therefore, give validity to a promise for which there was no consideration. It did mean, however, to add a new requisite to promises previously valid ; namely, that the promise shall be in writing. But the promise is one thing; the consideration is another; and our statute, while it requires the former to be in writing, is silent as to the latter. It is not for ns to add to the requirements of the statute, in the hope of more effectually advancing its objects. I am of opinion, therefore, that the consideration need not he expressed in the promise, but may be proved, at the trial, by parol evidence, as at the common law.
Then, as to the other points in the cause. On the trial, the defendant moved the court to exclude from the jury, the written promise made by Coigin to pay the debt of Gregory, on the ground that the promise did not proceed upon the request of, or any consideration moving from Gregory to the defendant. Nothing can be clearer than that neither of these grounds was sufficient cause for excluding the promise as evidence. No request from Gregory was necessary. It was surely competent to Coigin to engage to pay the debt due by Gregory, and such engagement, even although unknown to Gregory, *104 would be binding on Colgin, provided it was founded on sufficient -consideration. And as to the consideration, it is perfectly clear, that it need not have any relation to the interest of the party making the promise; it is sufficient if it affect the interest of the person to whom, it is made. Loss or disadvantage to the person to whom the promise is made, is as good a consideration, as benefit or advantage to. the person making it. Thus, a forbearance to sue, or the surceasing of an action, is a good consideration, although that may operate exclusively for the benefit of the original debtor.
But it was contended, that if the court ought not to have excluded the evidence, for either of the causes alleged by the defendant, yet, as it was objected to, the court should have informed the jury, that the promise was of no avail, unless there should be proof of its acceptance by the plaintiff. I cannot think so. The evidence was not objected to on that ground, and we may fairly infer from the absence of such objection, that acceptance was proved. Every body knows, that what may be intended as a promise, is in truth no promise, until it is accepted. Until then, it is a mere declaration of intention. In cases of this sort, the evidence consists of various links, and these links must, of necessity, be exhibited successively and in detail. If the plaintiff fail to exhibit airy one of them, it is the right and the duty of the defendant, to demur to the evidence, or to move the court to instruct the jury, that the action cannot be sustained, unless they shall think that the whole chain of evidence is completed. If, however, he fail to demur, or to move for such instruction, but objects only to a part of the evidence, on some insufficient ground, it is not proper either for the court trying the cause, or the appellate court, to treat such partial objection, as a demurrer to evidence. In such a case, the proper course of the defendant, is plain and obvious. If there be no evidence of acceptance, he should demur, or move the *105 court to instruct the jury, that a promise not accepted, is no sufficient cause of action. In the case before us, there is no demurrer to evidence, nor any exception on the ground that the promise was not accepted; and the jury having found a general verdict for the plaintiff, we must infer that every thing necessary to support the action, was proved on the trial.
These remarks apply also to another objection, which was made in the argument, to the promise given in evidence—that it was not in fact a promise, but only a proposition to enter into an arrangement on the subject.
Even if it were admitted, that the words of the writing were somewhat doubtful or ambiguous, in this respect, that is no valid objection to its introduction as evidence, since it is competent to the party to remove such doubt or ambiguity, by other evidence as to the situation and circumstances of the parties, at the time the writing was executed. And, in this view of the subject, I think the deed of trust, given to Colgin, excepted to in the court below, was properly permitted to go to the jury. I think the judgment should be affirmed.
Tucker, P. concurred. Judgment affirmed.