## SUPREME COURT.

SAMUEL P. DINSMORE agt. THE ATLANTIC AND PACIFIC RAIL-
ROAD COMPANY and others.

This action was brought to restrain the Atlantic and Pacific Railroad
Company, a corporation chartered by congress in July, 1866, from pay-
ing the rents reserved in a lease made to it by the South Pacific Railroad
Company of Missouri, a corporation chartered by the legislature of
Missouri. The rent being payable for the use of the railroad constructed
and operated by the lessor, and five other railroads previously leased
and demised to the South Pacific Railroad Company of Missouri.

The Atlantic and Pacific Railroad Company was empowered by its charter
to construct a line of railroad from the town of Springfield, in the state
of Missouri, to the western boundary line of said state, and thence by
a designated route to the Pacific ocean.

The South Pacific Railroad Company of Missouri was authorized to build
and extend its road from St. Louis, westerly through Jefferson City,
Springfield and Neosho, to the westerly bounds of the state.

The charter of the Atlantic and Pacific Railroad Company, among other
things, provided that if the route described should be found on the line
of any other railroad route, to aid in the construction of which, lands
had been previously granted by the United States, as far as the routes
were upon the same general line, the amount of land granted to the
Atlantic and Pacific Railroad Company should be deducted from the
grant made by that act.

And in such case it was provided that the railroad company receiving the
previous grant of land, could assign its interest to the Atlantic and
Pacific Railroad Company, or consolidate, confederate or associate with
such company, upon the terms contained in the first and seventeenth
sections of the act.

The South Pacific Railroad Company of Missouri, having received a
prior grant of land from the United States, and passing through Spring-
field and Neosho, was within the description of the one from which the
Atlantic and Pacific Railroad Company was empowered to purchase the
interest of, or consolidate with.

But the Atlantic and Pacific Railroad Company took a lease of the South
Pacific Railroad Company of Missouri, and in addition to the rights

and interest of the latter company, including the privilege of extending the line to St. Louis, took also that part of the road proceeding westward from Franklin, through Jefferson City, together with leases of the five other railroads mentioned, in no way incidental to the interest which could lawfully be made the subject of the purchase. And the rental agreed to be paid consisted of an entire sum, including those lines as well as that between Franklin and St. Louis.

*Held,* That as such powers, to take these leases, were neither designed nor given to defendant's corporation, the leases of the road from Franklin through Jefferson City westerly, as well as the assignments of the leases of the other five roads, would seem to be void for want of authority in the Atlantic and Pacific Railroad Company to receive them.

And that would result in avoiding the lease from Franklin to St. Louis, as the rent to be paid for all consists of an entire amount incapable of apportionment, and this would constitute a good reason for enjoining the payment altogether.

But that would require the lease and assignments to be altogether annulled, which would result in defeating the entire claim the South Pacific Railroad Company of Missouri as well as the other railroad companies, whose leases have been assigned, may make for the payment of the rent agreed to be paid. And that cannot lawfully be done in this action, because they have not been made *parties* to it.

The defendant, the Atlantic and Pacific Railroad Company, has a direct interest in requiring the presence of the South Pacific Railroad Company of Missouri; for it should not be enjoined from paying the rent reserved, without, at the same time, having its covenant to pay declared void; and that cannot be done in the present state of the case.

The rent which has accrued has already been paid, and before the next installment matures, the plaintiff will have abundant opportunity to bring his action in proper form, and before a tribunal having competent jurisdiction over all the parties to the controversy, when entire justice can be administered. Therefore, no necessity exists for continuing the present injunction, until such an action can be commenced.

*New York Special Term, August,* 1873.
MOTION to continue injunction.

JULIAN E. DAVIES & WM. C. BARRETT, *for plaintiff.*

COLES MORRIS, *for defendants,* in an elaborate and able general brief stated, on the second point, that the court could not determine the validity of the lease without directly affecting the rights of the South Pacific Railroad Company of

Missouri, not a party to the action, as it would be contrary to all rules which govern courts of equity, and against the principles of natural justice, citing *Story's Eq. Pl.*, § 77; *Mallon agt. Hinde*, 12 *Wheat., p* ; *Russell* agt. *Clark's Exrs.*, 7 *Cranch*, 96; *Gray* agt. *Schenck*, 4 *Comst. R., p.* 460; *Spann agt. Scoville et al.*, 2 *Cush.*, (*Mass.*) *R.*, 578; *Hallett* agt. *Hallett*, 2 *Paige Ch. R.*, 19; *Howell* agt. *Chicago and N. W. R. R. Co.*, 51 *Barb.*, 379; *Code*, § 122; *Sturtevant* agt. *Brewer*, 4 *Bosw.*, 628; *Monroe* agt. *Galveston, etc., R. R. Co.*, 19 *Abb.*, 90.

On the sixth point, the power to grant preliminary injunctions ought to be exercised with extreme caution and applied only in very clear cases, citing 2 *Story's Eq. Pl.*, § 959; *Woodward* agt. *Harris*, 2 *Barb. Ch.*, 443; *Brown* agt. *Newall*, 2 *Mylne & Craig*, 570; *Ramsey* agt. *Erie R. R. Co.*, 7 *Abb.* (*N. S.*), *p.* 187.

DANIELS, *J.*—The substantial object of this action is to restrain the Atlantic and Pacific Railroad Company from paying the rents reserved in a lease made to it by the Pacific Railroad Company of Missouri. The rent is payable for the use of the railroad constructed and operated by the lessor, and for the control and use of five other railroads previously leased and demised to the South Pacific Railroad Company of Missouri.

The road of the lessor extended from St. Louis westerly through Jefferson City, and was designed to be constructed to the westerly bounds of the state.

The roads leased to that company were the Missouri River railroad, the Leavenworth, Atchison, and North-western railroad, the Booneville extension of the Osage Valley and Southern Kansas railroad, the Lexington and St. Louis railroad, and the St. Louis, Lawrence, and Denver railroad. And these leases were assigned to the Atlantic and Pacific Railroad Company. They, as well as that portion of the Pacific railroad of Missouri, westerly of Franklin, were not

in the route over which the Atlantic and Pacific railroad by its charter was to construct its road, and formed no part of the connections which that act in terms authorized it to make. It is claimed, however, that the contract, by which all these roads in substance leased by the Atlantic and Pacific Railroad Company, was justified by the circumstance that it could not obtain the road from Franklin to St. Louis without taking the others along with it.

In order to determine whether this position can be maintained it will be necessary to ascertain the authority which the act of incorporation conferred in this respect upon the Atlantic and Pacific Railroad Company.

That act was enacted by congress and approved on the 27th day of July, 1866. And it empowered the corporation it created to construct, maintain and enjoy a continuous line of railroad; beginning at or near the town of Springfield in the state of Missouri, thence to the western boundary line of said state; and thence by the most eligible railroad route, as shall be determined by said company, to a point on the Canadian river; thence to the town of Albuquerque on the river Del Norto; and thence by the way of the Agua Firo, or other suitable pass, to the head waters of the Colorado Chiquito; and thence by the thirty-fifth parallel of latitude, as near as may be found most suitable for a railway route to the Colorado river, at such point as may be selected by said company for crossing; and thence by the most practical and eligible route to the Pacific."

And the company was vested with all the powers, privileges and immunities necessary to carry into effect the purposes of the act as therein set forth. In order to enable it to construct and furnish its road, it was munificently endowed with a large and liberal grant of the public lands, amounting in extent to about 55,000,000 of acres, and for its road-bed was given a strip 200 feet in width wherever it crossed the lands of the United States.

But in order to avoid a double donation of public pro-

perty to attain the same end, it was provided that if the route described should be found on the line of any other railroad route, to aid in the construction of which lands had been previously granted by the United States " as far as the routes are upon the same general line," the amount of land granted by its charter to the Atlantic and Pacific Railroad Company should be deducted from the grant made by that act. And in that case it was provided that the railroad company receiving the previous grant of land, could assign its interest to the Atlantic and Pacific Railroad Company, or consolidate, confederate, or associate with such company upon the terms contained in the first and seventeenth sections of the act.

These sections in general terms confined the interests to be acquired to the promotion of the purpose disclosed by the act without enlarging the authority otherwise conferred.

Before the enactment of this charter the state of Missouri incorporated a railroad company to construct a railroad from Franklin through Springfield and Neosho to the western boundary of the state.

The Southern Pacific Railroad Company had been made the recipient of a donation of the public lands under a previous grant of the United States. Through Springfield and Neosho certainly its railroad route was upon the same general line as that designated for the railroad of the Atlantic and Pacific Railroad Company. It was therefore within the provision of the charter declaring that in such an event a deduction should be made from the amount of the public lands otherwise provided for that company. And for that reason it was empowered to take an assignment of the interest of the Southwest Pacific Railroad Company, or consolidate, confederate or associate with it.

But before either was done the company owning the other route forfeited its rights to the state of Missouri, and that state, by its legislative authority, conferred them upon a new company in March, 1868, called the South Pacific Railroad Company. This new company, according to the affidavits produced,

was incorporated to construct a railroad from St. Louis to the western boundary of the state, passing through or near the towns of Springfield and Neosho. From that time the new company was within the description of the one from which the Atlantic and Pacific Railroad Company was empowered to purchase the interest of or consolidate with.

For it then became the owner of the railroad route and of the grant of land made to the preceding company. And it was on the existence of those circumstances alone that the power to purchase was made to depend. It was not restricted to a purchase from the company formed before the charter of the Atlantic and Pacific Railroad Company was enacted. But liberty was given to make the purchase of the company receiving the previous grant of land and also owning the *other route. Neither was it necessary that the other railroad should have been constructed, for the right to purchase was secured when it was found that both roads were upon the same line, provided the other company had received land granted for railroad purposes by the United States. Under the act of congress the purchase could lawfully be made of any company receiving such grant of land, and owning what may have been properly regarded as a rival route, and for that reason not to be built and fostered by the public bounty.

When this right to purchase was found to exist under the circumstances mentioned in the act of congress, it was not restricted to so much only of the other railroad route of the road authorized by that act. That would ordinarily be regarded as an end that could not probably be accomplished, for a company authorized to construct a line through the entire state could not be expected voluntarily to relinquish so much of its road as proved a rival to another route and retain and operate the residue. Such a surrender might prove entirely destructive to its prosperity and success. The act of congress was not confined by so narrow a view of what it might prove essential to accomplish, as that when the right to purchase arose from the existence of the circumstances

on which it was expressly made dependent, it entitled the Atlantic and Pacific Railroad Company to take an assignment of the interest of the company owning the other route, not a partial interest simply, but its entire interest; for the term interest, used in the act, when unrestrained, as it is in this case, includes all the interest owned in its own right by the other corporation.

This comprehended its route, road, property and franchises. Together they constituted its interest, and the act of congress permitted that to be assigned to the company it provided for organizing. A part of that interest was the corporate right to extend its road to St. Louis; and that in the sale made by the South Pacific Railroad Company to the Atlantic and Pacific Railroad Company was transferred to the latter company.

· The object of the act of congress seems to have been to provide for the company it formed substantially assuming all the corporate rights of the corporation owning the other route, provided it had received a grant of public lands. And by doing that it secured it lawful authority to construct and operate the road, the company whose rights it acquired was authorized to construct and maintain. That was necessarily so, since it clearly formed part of the interest of the other company.

The acquisition of this interest was a part of the purpose for which the Atlantic and Pacific Railroad Company was created ; and to promote that purpose, in order to reach its own lawful terminus, it had the power to accept from the legislature of the state of Missouri the franchise to lease, unite or consolidate with any other company owning a road continuous with and including any portion of that which it could lawfully make and operate. That was secured by the seventeenth section of its charter. That allowed the company to accept any donation, power, franchise, aid or assistance granted by any state for the purpose provided for by it. And as the assignments made by the South Pacific Railroad Company

transferred the right to it to extend its line to St. Louis, it could obviously do so by any practicable method supplied by the legislature of the state.

And that body provided that any company chartered by the state or act of congress, having the whole or part of its line within that state, could lease or purchase the line of any other road connected or continuous with its own line.

These provisions were broad enough to permit the Atlantic and Pacific Railroad Company to receive a lease of that part of the Pacific Railroad Company of Missouri extending from Franklin to St. Louis; for that did not exceed the bounds which, under the interest assigned to it by the South Pacific Railroad Company, it could lawfully extend the road.

And having the right to build and maintain a road to that point, the same purpose was, in substance, secured by the legislative act providing for the acceptance of a lease from the company which already had the road in existence.

It was an additional franchise for the accomplishment of one of the purposes provided for by the act of congress, and for that reason it could be lawfully received from the state, as the charter provided for such an addition to the powers of the corporation it created.

And if nothing more than that had been done the defendant's stockholders would have no just grounds of complaint, and no case would exist for an injunction.

The stockholders of this as well as of other corporations have the right to insist that neither its revenues nor its property shall be diverted from the lawful purpose of its organization; and the public interests require the observance of the same rule.

But the purchase which was made was not confined within those limits; for, in addition to the rights and interests of that company, including the privilege of extending the line to St. Louis, a lease of the Pacific railroad of Missouri was taken for that part of the road proceeding westward from Franklin through Jefferson City, together with leases of the

five other railroads previously mentioned, in no way, even incidental, to the interest which could lawfully be made the subject of the purchase; and the rental agreed to be paid consisted of an entire sum, including those lines as well as that between Franklin and St. Louis.

The reason given for taking those lines is the fact that the road from Franklin to St. Louis could not be leased without them.

But as the Atlantic and Pacific Railroad Company was not obliged to lease even that part of the route by anything contained in its own charter, or that of the South Pacific Railroad Company, whose interest it purchased, that inability formed no legal excuse which would justify the taking of the other leases.

If it could not obtain the lease it had the power to take, without the others, then all should have been refused, and a new road constructed, by itself, under the charter of the South Pacific Railroad Company, from Franklin to St. Louis.

It has always been the policy of the legislative authority of the country to confer upon corporations created or authorized by it, just such powers as it was deemed proper they should have.

And the courts have confined them within the reasonable construction of such powers.

Where they have proved not conveniently flexible, that has usually supplied a reason, inducing further legislation.

But not one justifying a transgression of their lawful authority.

There is nothing in the defendant's charter allowing it to take leases of the railroads, in order to induce the leasing to it of that part of the road between Franklin and St. Louis. If that could be done, with the same propriety it might, under similar exactions, have taken leases of every railroad in the west.

The authority which can in this instance be invoked in

support of what has been attempted, would include all that has been referred to.

It is clear that no such powers could have been designed for a corporation, whose leading and controlling purpose was the construction of a railroad from the state of Missouri to the Pacific ocean.

And as such powers were neither designed nor given, the leases of the road from Franklin through Jefferson City, westerly, as well as the assignments of the leases of the other five roads, would seem to be void for want of authority in the Atlantic and Pacific Railroad Company to receive them.

And that would result in avoiding the lease from Franklin to St. Louis, because the rent to be paid for all consists of an entire amount incapable of apportionment. There is no way afforded by the papers in which a separation can be made of that which was authorized, from that which the company had no right to receive, and no power to bind itself to pay for. This would constitute a good reason for enjoining the payment altogether.

But that would require the lease and the assignments to be altogether annulled, which would result in defeating the entire claim the Pacific Railroad Company of Missouri, as well as the other railroad companies whose leases have been assigned, may make for the payment of the rent agreed to be paid. And that cannot lawfully be done in this action because they have not been made parties to it. The authorities relied upon as excusing the omission of the Pacific Railroad Company of Missouri as a party, because it is a foreign corporation having neither property nor a place of business within this state, do not sanction that position.

In the cases cited one or more persons were made parties representing interests participated in by themselves and those who were beyond the jurisdiction of the court.

Here no person or body is brought before the court whose interest it is to sustain the validity of this lease and the assignments. The corporations entitled to insist upon the

validity of the covenant to pay the rent reserved are neither directly nor indirectly before the court.

And for that reason, no matter how clear the case may now appear against them, the court has no right to determine their rights.

They may be able to present reasons in their own behalf which will give the transactions involved an entirely different complexion.

In their absence the court cannot undertake to adjudge the case against them (*Russell* agt. *Clark's Exrs.*, 7 *Cranch*, 69, 98 ; *Mallan* agt. *Hinde*, 12 *Wheaton*, 194).

In this case it was held "that no court can adjudicate directly upon a person's right without the party being actually or constructively before the court" (*Id.*, 198, 199 ; *Hallett* agt. *Hallett*, 3 *Paige*, 15).

In this case the chancellor, after considering the exceptions to the general rule requiring all persons interested in the controversy to be made parties to the action, adds that the exceptions do " not extend to those cases where the rights of persons not before the court are so inseparably connected with the claims of the parties litigant that no decree can be made without materially affecting the rights of the former" (*Id.*, 19).

The same ruling was sustained in *Gray* agt. *Schenck* (4 *Com.*, 460).

And it seems needless to add that the present case is clearly within the principle maintained.

The defendant, the Atlantic and Pacific Railroad Company, has a direct interest in requiring the presence of the Pacific Railroad Company of Missouri.

For it should not be enjoined from paying the rent reserved, without at the same time having its covenant to pay declared void. . And that cannot be done in the present state of the case. The rent which has accrued has all been paid, and before the next installment matures, the plaintiff will have an abundant opportunity to bring his action in proper

form, and before a tribunal having complete jurisdiction over all the parties to the controversy, when entire justice can be administered.

For that reason no necessity exists for continuing the present injunction until such an action can be commenced.

The motion to continue it must be denied, with ten dollars